AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
District of Nebraska

United States of America )
v. )
)    Case No.   8:26MJ133
TIANRUI LIANG )
)
)
)
)

*Defendant(s)*

**SEALED**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____March 31, 2026_____ in the county of _____Sarpy_____ in the

_____ District of _____Nebraska_____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 795 | Photographing or sketching defense installations |

This criminal complaint is based on these facts:

See Attached Affidavit.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

FBI Special Agent Noah Heflin
*Printed name and title*

☐ Sworn to before me and signed in my presence.

☑ Sworn to before me by telephone or other reliable electronic means.

Date: 4/3/2026 _____

_____
*Judge's signature*

City and state:          Omaha, Nebraska

RYAN C. CARSON, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT

I, Noah Heflin, being first duly sworn, hereby depose and state as follows:

### Introduction and Agent Background

1.      I am a Special Agent with the Federal Bureau of Investigation and have been employed in that capacity since January 10, 2016. I am currently assigned to the Counterintelligence Squad of the FBI Omaha Field Office in the District of Nebraska. As such, I am a law enforcement officer of the United States, within the meaning of Section 115(c)(1) of Title 18 of the United States Code, who is authorized by law or by a government agency to engage in or supervise the prevention, detection, investigation or prosecution of any violation of federal criminal law. In the course of my duties as a Special Agent, I am responsible for investigating offenses involving espionage and related violations of law, including authorized retention, gathering, transmitting or losing classified documents or materials; unauthorized removal and retention of classified materials; illegally acting in the United States as a foreign agent; other national security offenses; and the making of false statements. In connection with my official duties, I have conducted both criminal and national security investigations.

2.      I have worked closely with Air Force Office of Special Investigations (OSI) on national security matters pertaining to Offutt Air Force Base (OAFB). As a result of my involvement in these investigations, as well as my training in counterintelligence operations, I am familiar with tradecraft and techniques employed by foreign adversarial nations, as well as the methods those nations use to collect intelligence on elements of U.S. military infrastructure.

3.      I make this affidavit in support of a criminal complaint and arrest warrant charging Tianrui LIANG (hereinafter referred to as LIANG) with violations of Title 18 United States Code, Sections 795, Photographing and sketching defense installations. The statements contained in this

affidavit are based upon my investigation, information provided by other law enforcement officers, other personnel specially trained in the seizure and analysis of computers and electronic media, and on my experience and training as a Special Agent with the FBI.

4. Because this affidavit is being submitted for the limited purpose of securing an arrest warrant, I have not included each and every fact known to me concerning this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not purport to set forth all of my knowledge of or investigation in this matter.

## STATUTORY AUTHORITY

5. For the reasons set forth below, there is probable cause to believe that LIANG photographed OAFB on March 31, 2026 without approval from the base commander in violation of Title 18, United States Code, Sections 795.

6. 18 U.S.C. § 795 states, "[w]henever, in the interests of national defense, the President defines certain vital military and naval installations or equipment as requiring protection against the general dissemination of information relative thereto, it shall be unlawful to make any photograph . . . of such vital military and naval installations or equipment without first obtaining permission of the commanding officer . . . and promptly submitting the product obtained to such commanding officer or higher authority for censorship or such other action as he may deem necessary. Whoever violates this section shall be fined under this title or imprisoned not more than one year, or both."

7. Executive Order 10104 defines the following as vital military and naval installations:

    a. All military, naval, or air-force installations . . . which are now classified, designated, or marked under the authority or at the direction of the President,

the Secretary of Defense, the Secretary of the Army, the Secretary of the Navy, or the Secretary of the Air Force as "top secret", "secret", "confidential", or "restricted", and all military, naval, or air-force installations and equipment which may hereafter be so classified, designated, or marked with the approval or at the direction of the President, and located within:

- Any military, naval, or air-force reservation, post, arsenal, proving ground, range, mine field, camp, base, airfield, fort, yard, station, district, or area

b. All military, naval, or air-force aircraft, weapons, ammunition, vehicles, ships, vessels, instruments, engines, manufacturing machinery, tools, devices, or any other equipment whatsoever, in the possession of the Army, Navy, or Air Force or in the course of experimentation, development, manufacture, or delivery for the Army, Navy, or Air Force which are now classified, designated, or marked under the authority or at the direction of the President, the Secretary of Defense, the Secretary of the Army, the Secretary of the Navy, or the Secretary of the Air Force as "top secret", "secret", "confidential", or "restricted", and all such articles, materials, or equipment which may hereafter be so classified, designated, or marked with the approval or at the direction of the President.

## **PROBABLE CAUSE**

8.　On March 31, 2026, Air Force Office of Special Investigations (OSI) was notified that an individual in the vicinity of OAFB was observed taking photographs of the OAFB flightline and aircraft. A witness described a vehicle pulled off on the east side of Harlan Lewis Road and

identified a male holding a camera with a telescopic lens. The witness observed an aircraft on the runway at the same time. Harlan Lewis Road is a public road that runs directly adjacent to OAFB along the bases' eastern perimeter. The OAFB perimeter is surrounded by a fence restricting access from persons entering and also contains signage designating the airspace as restricted.

9.     According to its website, OAFB is home to the 55th Wing, the United States Strategic Command, the 557th Weather Wing, the 95th Wing, and various tenant units. The 55th Wing is the host unit of OAFB, the largest wing in Air Combat Command and the second largest in the Air Force.  OAFB hosts a variety of aircraft to include the RC-135V/W Rivet Joint, RC-135S Cobra Ball, RC-135U Combat Sent, WC-135W Constant Phoenix, E-4B National Airborne Operations Center, and the U.S. Navy's E-6B Mercury. OAFB is designated as a vital military installation.

10.    OSI and OAFB Security Forces responded and located the subject subsequently identified as LIANG. LIANG possessed a Chinese passport and was in the U.S. on a valid B1/B2 visa.

11.    LIANG was interviewed by affiant and OSI Special Agent Carlos Morillo regarding his activities near OAFB. LIANG was a student at Glasgow University in Scotland. On March 26, 2026, LIANG flew to Vancouver, Canada and met his friend, Zhihe TIAN (TIAN), in Vancouver. TIAN was a student at Columbia University in New York, but allegedly wanted to register his vehicle in Vancouver, Canada because it was cheaper. JIANG and TIAN drove TIAN's vehicle across the border and into the U.S. near the Vancouver border crossing on March 28, 2026.

12.    LIANG and TIAN drove from Seattle, Washington to Billings, Montana and stopped to spend the night on March 29, 2026. TIAN flew back to New York because he had to attend classes. LIANG continued to drive TIAN's vehicle to Ellsworth Air Force Base (AFB) in

South Dakota. LIANG showed affiant a screenshot of his iPhone. The screenshot was a maps view of Ellsworth AFB that showed LIANG's "blue dot" representing his GPS position next to the Ellsworth AFB flight line. The "blue dot" was outside of the base perimeter. LIANG stated the screenshot was simply to show he was there. LIANG wanted to take a picture of the B1-B airplane, but stated the planes had been moved to the United Kingdom (UK) per public information. LIANG knew that the B1-B was a strategic bomber that "dropped the weapon."

13.    From Ellsworth, LIANG drove to Omaha, Nebraska to see OAFB. After photographing OAFB, LIANG was going to drive to Kansas City, Missouri and leave TIAN's vehicle in the airport parking garage. LIANG was then going to rent another vehicle and drive to Tinker AFB in Oklahoma to photograph the E4 airplane if the plane was located at Tinker AFB. After Tinker AFB, LIANG was going to drive to Dallas, Texas and eventually fly to New York. TIAN was going to fly to Kansas City and pick up the vehicle and drive it back to New York. LIANG was scheduled to leave the U.S. on or around April 13, 2026 to fly back to Scotland. LIANG was repeatedly questioned regarding the circuitous logistics of the trip and why he did not just drive TIAN's vehicle back to New York. LIANG stated that the route he wanted to go (i.e., Tinker AFB to Dallas) was the wrong direction from New York so it made more sense for TIAN to fly back down to Kansas City and pick up the vehicle and drive it back to New York himself.

14.    LIANG admitted that he photographed several planes while at OAFB – including the RC-135 and the E-4B. LIANG stated that a website called "planespotter" provided instructions on locations where individuals could take pictures of various flightlines – including OAFB. The website also had instructions about where it was legal to take photographs. LIANG stated it was legal to take pictures of the sky, but he knew it was illegal to take pictures of the planes on the ground. LIANG admitted that he took pictures of the planes on the ground, but stated that he did

it so he could see the "status" of the plane and that it was only for his personal collection. LIANG did not seek out or receive permission to take the photographs from the commanding officer or higher authority at OAFB.

15. LIANG stated that TIAN had warned LIANG not to get in trouble while photographing the military installations. LIANG had also heard that the FBI might seize his electronics and not give them back if confiscated while photographing the military bases.

16. LIANG primarily took pictures of the planes with his Canon camera. However, LIANG showed affiant a picture on his iPhone that was of the screen of the Canon camera. The picture showed a plane at OAFB that LIANG had taken on the Canon camera. LIANG also possessed a DJI Mavic 4 Pro Drone, but stated that the drone did not belong to him and that he did not fly it at OAFB.

17. Following the interview, LIANG provided written consent for the FBI to search, among other items, his iPhone and Canon camera. A subsequent review of the Canon camera revealed numerous photographs of planes located on the OAFB flightline.

### CONCLUSION

18. Based upon the above information, probable cause exists to believe Tianrui LIANG did take unauthorized photographs of the OAFB flightline – including military aircraft – in violation of 18 U.S.C. § 795.

19. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application, complaint, and arrest warrant. Premature disclosure of the contents of this affidavit and related

documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

Respectfully submitted.

SA Noah Heflin
Special Agent, Federal Bureau of Investigation

Subscribed and sworn to before me via reliable electronic means on this 3rd day of April, 2026.

RYAN C. CARSON
United States Magistrate Judge